UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:12-CR-038 (EBB) |
| | : | |
| DEBORAH L. WILMOT | : | September 11, 2012 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The following discussion is respectfully submitted on behalf of Deborah L. Wilmot to assist the Court in its sentencing determination.  It is the defendant's position that a sentence from within the guideline range which the parties have stipulated is applicable to the case (18-24 months) is sufficient but not greater than necessary to satisfy all of the goals of federal sentencing. 18 U.S.C. § 3553.

*Introduction*

On March 7, 2012, Deborah L. Wilmot waived the Indictment and pleaded guilty to a one-count information that charged her with tax evasion in violation of 26 U.S.C. § 7201.  The offense conduct involves a straight-forward set of facts.  In the tax years 2008 and 2009, Deborah L. Wilmot was employed by the Amkai Corporation. The defendant caused individual income tax returns (IRS Forms 1040) to be prepared which reported her and her husband's legitimate compensation for those years.  The offense involves Deborah L. Wilmot's failure to report on those tax returns the substantial additional amounts of income she realized from Amkai as a consequence of her having misappropriated or embezzled money from her employer that totaled $221,624 on

1

which the defendant owes some $69,049 in additional income tax (the stipulated tax loss).

While the offense conduct underlying the count of conviction is thus simple, during the presentence investigation, it became apparent to the undersigned and to the probation department that Deborah L. Wilmot's misappropriation of funds at Amkai was only the latest of a long line of similar thefts executed by Deborah L. Wilmot from virtually every one of her prior employers. The catalogue of these events is set forth in detail in the PSR. The history includes a conviction in the Superior Court in Litchfield on larceny charges that were brought in response to a complaint by the Canterbury School where Deborah L. Wilmot worked as a controller from October 15, 2001 to June 27, 2003. The Canterbury School incident is significant to the defendant's history because the Superior Court, after Deborah L. Wilmot's guilty plea, and after Canterbury School had been repaid $96,778.60 that was stolen, sentenced Deborah L. Wilmot to 15 years imprisonment, suspended after service of 3 years. Deborah L. Wilmot was thus incarcerated for the period October 1, 2004 to December 16, 2005, and then placed in transitional custody.

At the time of the current offense, Mrs. Wilmot was, as she is now, the mother of two teenage children. Her husband was, as he has been for the last four years, employed as an executive at Sikorsky Aircraft. In trying to fathom what lay at the core of this episode, it was made clear that none of the usual suspects or demons were at work to drive Mrs. Wilmot's conduct. Thus, Mrs. Wilmot was not a compulsive gambler (indeed she was not a gambler at all), there was no indication that drugs or any substance abuse was present in her or her family's lives, and there was no pressing

financial emergency to extinguish with the stolen funds.  Moreover, and most telling, is the fact that despite having experienced the avalanche of negative consequences of her prosecution and sentence for the Canterbury School incident, Mrs. Wilmot continued to rip off her employers going forward.  Her post-prison conduct represents an unbroken chain of accounting department jobs and her devising means to steal from these employers.  As before, there was no actual financial crisis or other circumstances driving this apparent compulsive behavior.  It was obvious to all that there was something very wrong with this picture.

The probation department urged the Court to authorize a psychiatric evaluation of Mrs. Wilmot.  By order dated May 24, 2012 the Court authorized the Yale School of Medicine's Department of Psychiatry to examine Mrs. Wilmot and submit a report to assist the Court in the sentencing.  The specific areas ordered to be addressed in the report were:

1. Mrs. Wilmot's history and present symptoms;
2. Psychological testing results;
3. The examiner's findings;
4. The examiner's opinions regarding the diagnosis, prognosis, course of treatment, etc.

Dr. Marina Nakic submitted a comprehensive report to probation on September 7, 2012 (which was forwarded to the undersigned on September 10, 2012).  The report incorporated the findings of psychological testing of the defendant by Dr. Madeline Baranoski.  Relevant portions of Dr. Nakic's report are reproduced in the probation department's Second Addendum to the PSR which was disclosed on September 10, 2012.

In summary, the report concludes that Mrs. Wilmot does not suffer from a mental

3

disease or defect that renders her criminal conduct a consequence of a major psychiatric disorder.  She was fully aware of the legal wrongfulness of her actions.  However, Dr. Nakic opines that the defendant's life-long history of theft indicates that she suffers from several Axis II (DSM IV TR) personality disorders and maladaptive personality characteristics, specifically Dependant, Anti-social, and Borderline characteristics (See Dr. Nakic's report at its p.12).

Dr. Nakic's report explains how these characteristics are relevant to Mrs. Wilmot's behavior and opines as to the prospects for rehabilitation. *Id*. at 12-13.

As quoted in the Second Addendum to the PSR, Dr. Nakic concludes that the "primary deterrence to recidivism will be external restraints in employment, achieved through prohibitory control over access to money." (Id).

The sentencing hearing is scheduled to take place on Tuesday, September 18, 2012 at 9:00am.

Mrs. Wilmot, together with undersigned counsel, have reviewed the PSR, its addendum and the psychiatric evaluation report.  With the exception of the PSR's proposed offense-level computation, the defendant does not have any objections to the PSR's findings and conclusions.  The issue presented by the objections to the PSR's guidelines offense-level computation is purely a legal one, and, the undersigned does not intend to offer any witness testimony or other evidence at the hearing.  The defendant and several members of her family and friends may request leave to address the Court prior to the imposition of the sentence.

The offense level computation in the PSR computes the offense level for the tax evasion count of conviction with reference not to the stipulated "tax loss" ($64,049), but

4

rather, to a loss amount arrived at by aggregating the financial loss to Amkai from the embezzlement ($221,624) with the stipulated tax loss ($69,049) for a total figure of $290,673, with a resulting offense level of 18.

The parties' guideline stipulation is set forth in the plea agreement.  It provides that the offense level be determined with reference to only the tax loss figure. Under Guideline §2T4.1, a $69,049 tax loss correlates to an offense level of 14, which is enhanced 2-levels by the §2T1.1(b)(1) specific offense characteristic because none of the embezzlement income was reported.  The resultant level 16 would be reduced 3-levels (if the Court affords the defendant the adjustments under §3E1.1 for acceptance of responsibility).  All of which would yield a total adjusted offense level of 13; and, when that is combined with the stipulated CHC III would result in a range of 18-24 months incarceration.  The PSR's proposed computation would almost double that range.  The PSR's loss figure correlates to an offense level 18, which would, according to the PSR, be enhanced 2-levels for underporting the illegal source income, and be reduced by 3-levels for acceptance which results in a total adjusted offense level of 17, and a range of 30-37 months.

It is submitted that the PSR's proposed Guidelines computation incorrectly applies the §1B1.3  "relevant conduct" provisions when it aggregates the loss incurred by Amkai with the stipulated tax loss to arrive at the base offense level for the offense of conviction. The relevant conduct provision, Guidelines §1B1.3, sets out rules that broaden the information the Court can utilize to determine the offense level beyond the conduct involved in the offense of conviction.  However, there are limits to the use of non-charged conduct. Thus §1B1.3(a)(2) informs that the base offense level shall be

5

determined on the basis of all offenses that would be required to be grouped under the rules in §3D1.2(d). But inclusion of two offenses in the list at §3D1.2(d) does not, in itself, mandate that the financial losses from the two offenses be aggregated for purposes of determining the combined offense level. Rather, §1B1.3(a)(2) sets out an additional prerequisite to aggregation when the offenses both appear on the §3D1.2(d) grouping list and that is that the two offenses must involve conduct by the defendant that is either part of the "*same course of conduct*" or part of "*the same scheme or plan as the count of conviction*". (see: Application note 10, to §1B1.3; Background, at the third full paragraph where the operation of §1B1.3(a)(2) is explained). It is submitted here that the uncharged embezzlement conduct cannot be found to be either part of the same course of conduct or part of a common scheme or plan. The *Gordon* decision [*U.S. v. Gordon, 291 F.3d 181 (2d Cir. 2002)*] relied upon by the PSR is not determinative of the issue presented in the instant matter. While the Court's ruling in *Gordon* notes that the fraud counts and the tax counts in Gordon's case were properly grouped, the issue that was resolved was whether or not they should be grouped under §3D1.2(c) or 3D1.2(d). The discussion and analysis did not concern itself with the issue of whether any uncharged financial fraud conduct was sufficiently connected to a count of tax evasion as to require inclusion of the fraud loss in the base offense level computation of the offense of conviction. The issue of whether or not the embezzlement was part of the same course of conduct as the tax evasion conduct is answered – in the negative – by simple reference to the Guideline's definition of the term: i.e., the losses from two offenses can be aggregated where they are found to be   "*Sufficiently*

*connected or related to each other as to warrant the conclusion that they are part of a single episode*, *spree, or ongoing series of offenses....*"; and one is to look to "*the degree of similarity of the offenses, the regularity (repetitions) of the offenses....*" etc. (See: Application note 9(B) to Guideline §1B1.3). The embezzlement conduct and the tax offense in the instant case are simply not so connected. It is illustrative in this regard to note that the stipulated tax loss here is the product of a proper application of the same course of conduct concept: Mrs. Wilmot has been charged and convicted of a single count of tax evasion involving the erroneous tax return she caused to be filed for the 2009 tax year. The tax loss for that offense was $36,592. However the tax loss stipulated to be employed for the computation of the base offense level is $69,049. This is so because the tax loss related to the identical conduct for tax year 2008 (which was not formally charged) was aggregated with the 2009 tax loss. The uncharged prior year's tax evasion was "part of the same course of conduct" as the tax evasion charged for 2009.

      The Guidelines, at Application note 9(A) to §1B1.3, provide a definition of the concept "common scheme or plan" . An analysis of the facts of Mrs. Wilmot's case demonstrates that the loss incurred by the victim of the embezzlement conduct should not be aggregated with the tax loss for purposes of the offense level computation. Application note 9(A) instructs that "*for two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi....*" None of these criteria are present in the instant matter.

7

The embezzlement loss should not be aggregated with the (two) tax losses for purposes of computing the base offense level in this case. Indeed, the 2-level enhancement that has been imposed for the specific offense characteristic in §2T1.1(b)(1) provides the only appropriate adjustment for the embezzlement conduct.

*Discussion: The purposes of sentencing, 18 U.S.C. §3553(a)(2), will be complied with by a sentence within the prescribed range (18-24 months).*

In the plea agreement, he defendant has agreed that a sentence within the range of 18 to 24 months of incarceration would be reasonable. The facts and circumstances present in Mrs. Wilmot's case which support this conclusion include the following: Mrs. Wilmot is the 42 year old mother of two children ages 16 and 18. Her daughter is experiencing her own psychiatric crisis. She is dependent upon Mrs. Wilmot for emotional support. Mrs. Wilmot's husband is or will shortly commence divorce proceedings; Mrs. Wilmot is facing serious criminal ramifications in the Connecticut Superior Court including almost certain exposure to lengthy terms of incarceration as a result of her criminal behavior. The State has recently filed larceny charges for an alleged embezzlement when Mrs. Wilmot was employed in an accounting position at a local country club. This new prosecution and the instant offense have been charged as violation of probation with respect to the conviction and sentence imposed by the Connecticut Superior Court in connection with the embezzlement offense at the Canterbury school. For that conviction, Mrs. Wilmot received a sentence of 15 years inmprisonment, suspended after 3 years. She thus "owes" up to 12 years on that case. The sentencing of the VOP and the prosecution of the country club larceny charges

have been held in abeyance pending the issuance of the psychiatric evaluation reports and the instant sentencing. Mrs. Wilmot has executed a stipulated judgment that obligates her to repay Amkai, LLC, for the funds she embezzled. The total amount due is at least $300,000, of which, at the time of Mrs. Wilmot's plea in this case, about $127,000 had been paid. The State of Connecticut is also investigating a potential criminal case against Mrs. Wilmot regarding allegedly improper claims for unemployment compensation. Thus, no matter what sentence the Court decides to impose in this case, Mrs. Wilmot's tribulations will have only begun.

It is significant to note that the psychiatric evaluation of Mrs. Wilmot found that Mrs. Wilmot knows that all these adverse consequences to her and her family are the result of her wilful criminal conduct. This is remarkable because she engaged in the thievery for the purpose of providing otherwise unaffordable luxuries to her children. This apparent contradiction in thinking is, according to the evaluation, symptomatic of the personality disorders from which the defendant suffers - she apparently does not make any connection between the wrongfulness of her crimes and the drive to fulfill what she perceives as her obligation as a mother to her children.  She utilizes the defenses of compartmentalization, delusion, and an inability to form a coherent view of herself in the world in which she lives. It is clear that this defendant suffers from a long-standing deep seated disability. And, while it is not requested that the Court afford the defendant any measure of leniency in the sentence to account for Mrs. Wilmot's condition, it is requested that the Court resist the natural tendency to impose a more harsh sentence in response to the symptomatic behavior in Mrs. Wilmot's criminal history.

The specific purposes of sentencing under §3553(a)(2) will be satisfied by a sentence within the range, as follows:

(A) the seriousness of the offense will be reflected by the proposed sentence. This case involves a criminal tax count – there was no individual victim and the defendant has agreed to pay to the IRS all of the taxes, interest, and penalties due from the failure to report the embezzlement income. To ensure this, the defendant has agreed to the entry of an order of restitution for the taxes owed. The seriousness of the embezzlement conduct, including that which occurred at Amkai, the Bulls Bridge Country Club, the Canterbury school, and other cases which will be brought, will also be apparent from the punishment imposed by the Connecticut Superior Court in the near future, all of which will, along with the sentence imposed in this federal case, serve to punish and promote respect for the law.

(B) The same considerations noted in (A), above, will work to effect general deterrence. As in all IRS prosecutions, the facts of the case, the charge, and the disposition reached will be the subject of press releases issued by the U.S. Attorney's office and by the IRS which will be distributed to, and then published by, all forms of media. A guideline sentence of 18 months imprisonment will be viewed as a stiff sentence by the public. With respect to specific deterrence – i.e., imposing a sentence that will act to inhibit Mrs. Wilmot from repeating the offense conduct, it is probably certain that Mrs. Wilmot will refrain from any future criminal conduct involving taxes – but, with respect to embezzlement it is perhaps best to include special conditions of supervised release that include a prohibition on employment in any capacity that would provide Mrs. Wilmot access to or control over the finances of her employer pursuant to

18 U.S.C. §3563(b)(5).

(C) The public can be adequately protected from further criminal conduct by the defendant by close supervision and the special conditions noted in (B), above.

(D) The defendant obviously needs long-term treatment as described in the evaluation. This also should be a special condition.

Conclusion

For all of the forgoing reasons, it is respectfully requested that the Court reject the PSR's alternative offense level computation and give effect to the stipulation reached between the parties.  Moreover, it is submitted that in view of the inevitable future State criminal consequences that will be brought to bear upon the defendant, as well as the other mitigating circumstances present in this case, that a sentence at the low end of the range be imposed. Finally it is requested that the Court's sentence include the appropriate conditions which will work to serve the interests of the public and Mrs. Wilmot.

    Respectfully submitted
    Deborah L. Wilmot, Defendant

    /s/ Kurt F. Zimmermann
By: Kurt F. Zimmermann, her attorney
    Federal Bar No.  ct00581
    Silver stein & Osach, P.C.
    234 Church Street, Suite 903
    New Haven, CT  06510
    (203) 865-0121; fax 0255
    kzimmermann@so-law.com

**CERTIFICATION**

      This is to certify that on September 11, 2012, the above Defendant's Memorandum in Aid of Sentencing was filed electronically and will be transmitted to counsel of record by operation of the Court's CM/ECF system. A hard-copy of this brief will be hand delivered to the chambers of the Hon. Ellen B. Burns on September 12, 2012.

      /s/ Kurt F. Zimmermann
      Kurt F. Zimmermann